USDC- GREENBELT
'23 JUL 7 AM 11:22

These attachments are for evidence ~~Bon~~ for
my complaint that I described

AAQ23CV1791

 **STATEMENT OF CREDIT DENIAL, TERMINATION OR CHANGE**

Date: May 9, 2023
App. ID. 20231261304100

MR. JUWUAN BRISCOE
3011 PRINCE ALBERT SQ APT F
WALDORF, MD 20602-1922

RE: USED AUTOMOBILE

Thank you for the recent request for credit. After careful review and
consideration we are unable to approve your request for the following reasons:

YOU CAUSED NAVY FEDERAL A LOSS

If you have any questions regarding this notice, you should contact:

Navy Federal Credit Union
Lending Committee
P.O. Box 3000
Merrifield, VA 22119-3000
1-888-842-6328

Notice: The Federal Equal Credit Opportunity Act prohibits creditors from
discriminating against credit applicants on the basis of race, color, religion,
national origin, sex, marital status, age (provided the applicant has the
capacity to enter into a binding contract); because all or part of the
applicant's income derives from any public assistance program; or because the
applicant has in good faith exercised any right under the Consumer Credit
Protection Act. The Federal agency that administers compliance with this law
concerning this creditor is:

Bureau of Consumer Financial Protection,
1700 G Street NW., Washington DC 20006.



PO Box 3000  Merrifield VA  22119-3000



Date: March 17, 2023
App. ID. 20230751429190

MR. JUWUAN
BRISCOE
3011 PRINCE ALBERT SQ APT F
WALDORF, MD 20602-
1922

RE: USED AUTOMOBILE

Thank you for the recent request for credit. After careful review and
consideration we are unable to approve your request for the following reasons:

YOU CAUSED NAVY FEDERAL A LOSS

If you have any questions regarding this notice, you should contact:

Navy Federal Credit Union
Lending Committee
P.O. Box 3000
Merrifield, VA 22119-3000
1-888-842-6328

Notice: The Federal Equal Credit Opportunity Act prohibits creditors from
discriminating against credit applicants on the basis of race, color, religion,
national origin, sex, marital status, age (provided the applicant has
the
capacity to enter into a binding contract); because all or part of the
applicant's income derives from any public assistance program; or because
the
applicant has in good faith exercised any right under the Consumer Credit
Protection Act. The Federal agency that administers compliance with this law
concerning this creditor is:

Bureau of Consumer Financial Protection,
1700 G Street NW., Washington DC 20006.

# Federal Reserve Act

## Section 16. Note Issues

### 1. Issuance of Federal Reserve notes; nature of obligation; where redeemable

Federal reserve notes, to be issued at the discretion of the Board of Governors of the Federal Reserve System for the purpose of making advances to Federal reserve banks through the Federal reserve agents as hereinafter set forth and for no other purpose, are hereby authorized. The said notes shall be obligations of the United States and shall be receivable by all national and member banks and Federal reserve banks and for all taxes, customs, and other public dues. They shall be redeemed in lawful money on demand at the Treasury Department of the United States, in the city of Washington, District of Columbia, or at any Federal Reserve bank.

[12 USC 411. As amended by act of Jan. 30, 1934 (48 Stat. 337). For redemption of Federal reserve notes whose bank of issue cannot be identified, see act of June 13, 1933.]

### 2. Application for notes by Federal Reserve banks

Any Federal Reserve bank may make application to the local Federal Reserve agent for such amount of the Federal Reserve notes hereinbefore provided for as it may require. Such application shall be accompanied with a tender to the local Federal Reserve agent of collateral in amount equal to the sum of the Federal Reserve notes thus applied for and issued pursuant to such application. The collateral security thus offered shall be notes, drafts, bills of exchange, or acceptances acquired under section 10A, 10B, 13, or 13A of this Act, or bills of exchange endorsed by a member bank of any Federal Reserve district and purchased under the provisions of section 14 of this Act, or bankers' acceptances purchased under the provisions of said section 14, or gold certificates, or Special Drawing Right certificates, or any obligations which are direct obligations of, or are fully guaranteed as to principal and interest by, the United States or any agency thereof, or assets that Federal Reserve banks may purchase or hold under section 14 of this Act or any other asset of a Federal reserve bank. In no event shall such collateral security be less than the amount of Federal Reserve notes applied for. The Federal Reserve agent shall each day notify the Board of Governors of the Federal Reserve System of all issues and withdrawals of Federal Reserve notes to and by the Federal Reserve bank to which he is accredited. The said Board of Governors of the Federal Reserve System may at any time call upon a Federal Reserve bank for additional security to protect the Federal Reserve notes issued to it. Collateral shall not be required for Federal Reserve notes which are held in the vaults of, or are otherwise held by or on behalf of, Federal Reserve banks.

[12 USC 412. As amended by the acts of Sept. 7, 1916 (39 Stat. 754); June 21, 1917 (40 Stat. 236); Feb. 27, 1932 (47 Stat. 57); Feb. 3, 1933 (47 Stat. 794); Jan. 30, 1934 (48 Stat. 338); March 6, 1934 (48 Stat. 991); June 30, 1941 (55 Stat. 395); May 25, 1943 (57 Stat. 85); June 12, 1945 (59 Stat. 237); June 19, 1968 (82 Stat. 189); Nov. 10, 1978 (92 Stat. 3672); March 31, 1980 (94 Stat. 140); Dec. 6, 1999 (113 Stat. 1638); and Oct. 28, 2003 (117 Stat. 1193).]

### 3. Distinctive letter on notes; destruction of unfit notes

Federal Reserve notes shall bear upon their faces a distinctive letter and serial number which shall be assigned by the Board of Governors of the Federal Reserve System to each Federal Reserve bank. Federal Reserve notes unfit for circulation shall be canceled, destroyed, and accounted for under procedures prescribed and at locations designated by the Secretary of the Treasury. Upon destruction of such notes, credit with respect thereto shall be apportioned among the twelve Federal Reserve banks as determined by the Board of Governors of the Federal Reserve System.

[12 USC 413. As amended by acts of June 21, 1917 (40 Stat. 236); Jan. 30, 1934 (48 Stat. 338); June 12, 1945 (59 Stat. 237); July 19, 1954 (68 Stat. 495); March 3, 1965 (79 Stat. 5); May 20, 1966 (80 Stat. 161); and March 18, 1968 (82 Stat. 50).]

### 4. Granting right to issue notes

The Board of Governors of the Federal Reserve System shall have the right, acting through the Federal Reserve agent, to grant in whole or in part, or to reject entirely the application of any Federal Reserve bank for Federal Reserve notes; but to the extent that such application may be granted the Board of Governors of the Federal Reserve System shall, through its local Federal Reserve agent, supply Federal Reserve notes to the banks so applying, and such bank shall be charged with the amount of the notes issued to it and shall pay such rate of interest as may be established by the Board of Governors of the Federal Reserve System on only that amount of such notes which equals the total amount of its outstanding Federal Reserve notes less the amount of gold certificates held by the Federal Reserve agent as collateral security. Federal Reserve notes issued to any such bank shall, upon delivery, together with such notes of such Federal Reserve bank as may be issued under section 18 of this Act upon security of United States 2 per centum Government bonds, become a first and paramount lien on all the assets of such bank.

[12 USC 414. As amended by acts of June 21, 1917 (40 Stat. 237); Jan. 30, 1934 (48 Stat. 338); June 12, 1945 (59 Stat. 237); and March 18, 1968 (82 Stat. 50).]

## 5. Deposit to reduce liability for outstanding notes

Any Federal Reserve bank may at any time reduce its liability for outstanding Federal Reserve notes by depositing with the Federal Reserve agent its Federal Reserve notes, gold certificates, Special Drawing Right certificates, or lawful money of the United States. Federal Reserve notes so deposited shall not be reissued, except upon compliance with the conditions of an original issue. The liability of a Federal Reserve bank with respect to its outstanding Federal Reserve notes shall be reduced by any amount paid by such bank to the Secretary of the Treasury under section 4 of the Old Series Currency Adjustment Act.

[12 USC 415. As reenacted by act of June 21, 1917 (40 Stat. 237); and as amended by acts of Jan. 30, 1934 (48 Stat. 339); June 30, 1961 (75 Stat. 147); March 18, 1968 (82 Stat. 50); and June 19, 1968 (82 Stat. 189). The act of June 30, 1961, is the Old Series Currency Adjustment Act.]

## 6. Substitution of collateral; retirement of Federal Reserve notes

Any Federal reserve bank may at its discretion withdraw collateral deposited with the local Federal reserve agent for the protection of its Federal reserve notes issued to it and shall at the same time substitute therefor other collateral of equal amount with the approval of the Federal reserve agent under regulations to be prescribed by the Board of Governors of the Federal Reserve System. Any Federal reserve bank may retire any of its Federal reserve notes by depositing them with the Federal reserve agent or with the Treasurer of the United States, and such Federal reserve bank shall thereupon be entitled to receive back the collateral deposited with the Federal reserve agent for the security of such notes. Any Federal Reserve bank shall further be entitled to receive back the collateral deposited with the Federal Reserve agent for the security of any notes with respect to which such bank has made payment to the Secretary of the Treasury under section 4 of the Old Series Currency Adjustment Act. Federal reserve notes so deposited shall not be reissued except upon compliance with the conditions of an original issue.

[12 USC 416. As amended by acts of June 21, 1917 (40 Stat. 237); June 30, 1961 (75 Stat. 147); and March 18, 1968 (82 Stat. 50). The act of June 30, 1961 is the Old Series Currency Adjustment Act.]

## 7. Custody of reserve notes, gold certificates, and lawful money

All Federal Reserve notes and all gold certificates, Special Drawing Right certificates, and lawful money issued to or deposited with any Federal Reserve agent under the provisions of the Federal Reserve Act shall hereafter be held for such agent, under such rules and regulations as the Board of Governors of the Federal Reserve System may prescribe, in the joint custody of himself and the Federal Reserve bank to which he is accredited. Such agent and such Federal Reserve bank shall be jointly liable for the safekeeping of such Federal Reserve notes, gold certificates, Special Drawing Right certificates, and lawful money. Nothing herein contained, however, shall be construed to prohibit a Federal Reserve agent from depositing gold certificates and Special Drawing Right certificates with the Board of Governors of the Federal Reserve System, to be held by such Board subject to his order, or with the Treasurer of the United States for the purposes authorized by law.

[12 USC 417. As added by act of June 21, 1917 (40 Stat. 238); and amended by acts of Jan. 30, 1934 (48 Stat. 339) and June 19, 1968 (82 Stat. 189).]

## 8. Engraving of plates; denominations and form of notes

In order to furnish suitable notes for circulation as Federal reserve notes, the Secretary of the Treasury shall cause plates and dies to be engraved in the best manner to guard against counterfeits and fraudulent alterations, and shall have printed therefrom and numbered such quantities of such notes of the denominations of $1, $2, $5, $10, $20, $50, $100, $500, $1,000 $5,000, $10,000 as may be required to supply the Federal reserve banks. Such notes shall be in form and tenor as directed by the Secretary of the Treasury under the provisions of this Act and shall bear the distinctive numbers of the several Federal reserve banks through which they are issued.

[12 USC 418. As amended by acts of Sept. 26, 1918 (40 Stat. 970); June 4, 1963 (77 Stat. 54); and Sept. 23, 1994 (108 Stat. 2293).]

## 9. Custody of unissued notes

When such notes have been prepared, the notes shall be delivered to the Board of Governors of the Federal Reserve System subject to the order of the Secretary of the Treasury for the delivery of such notes in accordance with this Act.

[12 USC 419. As amended by acts of May 29, 1920 (41 Stat. 654) and Sept. 23, 1994 (108 Stat. 2293).]

## 10. Custody of plates and dies; expenses of issue and retirement of notes

The plates and dies to be procured by the Secretary of the Treasury for the printing of such circulating notes shall remain under his control and direction, and the expenses necessarily incurred in executing the laws relating to the procuring of such notes, and all other expenses incidental to their issue and retirement, shall be paid by the Federal reserve banks, and the Board of Governors of the Federal Reserve System shall include in its estimate of expenses levied against the Federal reserve banks a sufficient amount to cover the expenses herein provided for.

[12 USC 420. Part of original Federal Reserve Act; not amended.]

## 11. Examinations of plates, dies, etc.

The Secretary of the Treasury may examine the plates, dies, bed pieces, and other material used in the printing of Federal Reserve notes and issue regulations relating to such examinations.

[12 USC 421. As amended by act of Sept. 23, 1994 (108 Stat. 2293).]

## 12. Appropriation for engraving, etc.

Any appropriation heretofore made out of the general funds of the Treasury for engraving plates and dies, the purchase of distinctive paper, or to cover any other expense in connection with the printing of national-bank notes or notes provided for by the Act of May thirtieth, nineteen hundred and eight, and any distinctive paper that may be on hand at the time of the passage of this Act may be used in the discretion of the Secretary for the purposes of this Act, and should the appropriations heretofore made be insufficient to meet the requirements of this Act in addition to circulating notes provided for by existing law, the Secretary is hereby authorized to use so much of any funds in the Treasury not otherwise appropriated for the purpose of furnishing the notes aforesaid: *Provided, however*, That nothing in this section contained shall be construed as exempting national banks or Federal reserve banks from their liability to reimburse the United States for any expenses incurred in printing and issuing circulating notes.

[Omitted from U.S. Code. Part of original Federal Reserve Act. This paragraph was in effect amended by subsection (a) of section 1 of the Permanent Appropriation Repeal Act of 1934, approved June 26, 1934 (48 Stat. 1224; 31 USC, 725), which provides: "That effective July 1, 1935, such portions of any acts as provide permanent or continuing appropriations from the general fund of the Treasury to be disbursed under the appropriation accounts appearing on the books of the Government, and listed in subsection (b) of this section, are hereby repealed, and any unobligated balances under such accounts as of June 30, 1935, shall be covered into the surplus fund of the Treasury." Among the appropriation accounts listed in subsection (b) is that for the preparation and issue of Federal Reserve notes.]

## 13. Checks and drafts to be received on deposit at par

Every Federal reserve bank shall receive on deposit at par from depository institutions or from Federal reserve banks checks and other items, including negotiable orders of withdrawal and share drafts and drafts drawn upon any of its depositors, and when remitted by a Federal reserve bank, checks and other items, including negotiable orders of withdrawal and share drafts and drafts drawn by any depositor in any other Federal reserve bank or depository institution upon funds to the credit of said depositor in said reserve bank or depository institution. Nothing herein contained shall be construed as prohibiting a depository institution from charging its actual expense incurred in collecting and remitting funds, or for exchange sold to its patrons. The Board of Governors of the Federal Reserve System shall, by rule, fix the charges to be collected by the depository institutions from its patrons whose checks and other items, including negotiable orders of withdrawal and share drafts are cleared through the Federal reserve bank and the charge which may be imposed for the service of clearing or collection rendered by the Federal reserve bank.

[12 USC 360. As amended by act of March 31, 1980 (94 Stat. 140).]

## 14. Transfer of funds among Federal Reserve banks

The Board of Governors of the Federal Reserve System shall make and promulgate from time to time regulations governing the transfer of funds and charges therefor among Federal reserve banks and their branches, and may at its discretion exercise the functions of a clearing house for such Federal reserve banks, or may designate a Federal reserve bank to exercise such functions, and may also require each such bank to exercise the functions of a clearing house for depository institutions.

[12 USC 248-1. As amended by acts of Aug. 23, 1935 (49 Stat. 704) and March 31, 1980 (94 Stat. 140). Reclassified (previously 12 USC 248(o).]

## 15. Settlement fund

The Secretary of the Treasury is hereby authorized and directed to receive deposits of gold or of gold certificates or of Special Drawing Right certificates with the Treasurer or any Assistant Treasurer of the United States when tendered by any Federal Reserve bank or Federal Reserve agent for credit to its or his account with the Board of Governors of the Federal Reserve System. The Secretary shall prescribe by regulation the form of receipt to be issued by the Treasurer or Assistant Treasurer to the Federal Reserve bank or Federal Reserve agent making the deposit, and a duplicate of such receipt shall be delivered to the Board of Governors of the Federal Reserve System by the Treasurer at Washington upon proper advices from any Assistant Treasurer that such deposit has been made. Deposits so made shall be held subject to the orders of the Board of Governors of the Federal Reserve System and deposits of gold or gold certificates shall be payable in gold certificates, and deposits of Special Drawing Right certificates shall be payable in Special Drawing Right certificates, on the order of the Board of Governors of the Federal Reserve System to any Federal Reserve bank or Federal Reserve agent at the Treasury or at the subtreasury of the United States nearest the place of business of such Federal Reserve bank or such Federal Reserve agent. The order used by the Board of Governors of the Federal Reserve System in making such payments shall be signed by the chairman or vice chairman, or such other officers or members as the Board may by regulation prescribe. The form of such order shall be approved by the Secretary of the Treasury.

[12 USC 467. As added by act of June 21, 1917 (40 Stat. 238); and amended by acts of Jan. 30, 1934 (48 Stat. 339) and June 19, 1968 (82 Stat. 189). Prior to enactment of the Banking Act of 1935, approved Aug. 23, 1935, the chairman and vice chairman of the Board of Governors of the Federal Reserve System were known as the governor and vice governor of the Federal Reserve Board, respectively. See note to section 1.]

## 16. Expenses

The expenses necessarily incurred in carrying out these provisions, including the cost of the certificates or receipts issued for deposits received, and all expenses incident to the handling of such deposits shall be paid by the Board of Governors of the Federal Reserve System and included in its assessments against the several Federal reserve banks.

[12 USC 467. As added by act of June 21, 1917 (40 Stat. 238).]

## 17. Preservation of provisions of Act of March 14, 1900

Nothing in this section shall be construed as amending section six of the Act of March fourteenth, nineteen hundred, as amended by the Acts of March fourth, nineteen hundred and seven, March second, nineteen hundred and eleven, and June twelfth, nineteen hundred and sixteen, nor shall the provisions of this section be construed to apply to the deposits made or to the receipts or certificates issued under those Acts.

[12 USC 467. As added by act of June 21, 1917 (40 Stat. 239).]

Last Update: March 13, 2017

# Federal Reserve Act

## Section 29. Civil Money Penalty

**(a) First Tier.** Any member bank which, and any institution-affiliated party (within the meaning of section 3(u) of the Federal Deposit Insurance Act) with respect to such member bank who, violates any provision of section 22, 23A, or 23B, or any regulation issued pursuant thereto, shall forfeit and pay a civil penalty of not more than $5,000 for each day during which such violation continues.

[12 USC 504(a). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by acts of Oct. 15, 1982 (96 Stat. 1523) and Aug. 9, 1989 (103 Stat. 470).]

**(b) Second Tier.** Notwithstanding subsection (a), any member bank which, and any institution-affiliated party (within the meaning of section 3(u) of the Federal Deposit Insurance Act) with respect to such member bank who

1.    A. commits any violation described in subsection (a);
      B. recklessly engages in an unsafe or unsound practice in conducting the affairs of such member bank; or
      C. breaches any fiduciary duty;

2. which violation, practice, or breach--

      A. is part of a pattern of misconduct;
      B. causes or is likely to cause more than a minimal loss to such member bank; or
      C. results in pecuniary gain or other benefit to such party,

shall forfeit and pay a civil penalty of not more than $25,000 for each day during which such violation, practice, or breach continues.

[12 USC 504(b). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by act of Aug. 9, 1989 (103 Stat. 470).]

**(c) Third Tier.** Notwithstanding subsections (a) and (b), any member bank which, and any institution-affiliated party (within the meaning of section 3(u) of the Federal Deposit Insurance Act) with respect to such member bank who--

1. knowingly--

      A. commits any violation described in subsection (a);
      B. engages in any unsafe or unsound practice in conducting the affairs of such credit union; or
      C. breaches any fiduciary duty; and

2. knowingly or recklessly causes a substantial loss to such credit union or a substantial pecuniary gain or other benefit to such party by reason of such violation, practice, or breach,

shall forfeit and pay a civil penalty in an amount not to exceed the applicable maximum amount determined under subsection (d) for each day during which such violation, practice, or breach continues.

[12 USC 504(c). As added by act of Nov. 10, 1978 (72 Stat. 3641) and amended by act of Aug. 9, 1989 (103 Stat. 470).]

**(d) Maximum Amounts Of Penalties For Any Violation Described In Subsection (c).** The maximum daily amount of any civil penalty which may be assessed pursuant to subsection (c) for any violation, practice, or breach described in such subsection is--

1. in the case of any person other than a member bank, an amount to not exceed $1,000,000; and
2. in the case of a member bank, an amount not to exceed the lesser of --

   A. $1,000,000; or
   B. 1 percent of the total assets of such member bank.

[12 USC 504(d). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by acts of Oct. 15, 1982 (96 Stat. 1523) and Aug. 9, 1989 (103 Stat. 470).]

**(e) Assessment, Etc.** Any penalty imposed under subsection (a), (b), or (c) shall be assessed and collected by

1. in the case of a national bank, by the Comptroller of the Currency; and
2. in the case of a State member bank, by the Board,

in the manner provided in subparagraphs (E), (F), (G), and (I) of section 8(i)(2) of the Federal Deposit Insurance Act for penalties imposed (under such section) and any such assessment shall be subject to the provisions of such section.

[12 USC 504(e). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by act of Aug. 9, 1989 (103 Stat. 470).]

**(f) Hearing.** The member bank or other person against whom any penalty is assessed under this section shall be afforded an agency hearing if such member bank or person submits a request for such hearing within 20 days after the issuance of the notice of assessment. Section 8(h) of the Federal Deposit Insurance Act shall apply to any proceeding under this section.

[12 USC 504(f). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by act of Aug. 9, 1989 (103 Stat. 470).]

**(g) Disbursement.** All penalties collected under authority of this paragraph shall be deposited into the Treasury.

[12 USC 504(g). As added by act of Nov. 10, 1978 (92 Stat. 3641) and amended by act of Aug. 9, 1989 (103 Stat. 470).]

**(h) Violate Defined.** For purposes of this section, the term "violate" includes any action (alone or with another or others) for or toward causing, bringing about, participating in, counseling, or aiding or abetting a violation.

[12 USC 504(h). As added by act of Aug. 9, 1989 (103 Stat. 470).]

**(i) Regulations.** The Comptroller of the Currency and the Board shall prescribe regulations establishing such procedures as may be necessary to carry out this section.

[12 USC 504(i). As added by act of Aug. 9, 1989 (103 Stat. 470).]

**(m)\* Notice Under This Section After Separation From Service.** The resignation, termination of employment or participation, or separation of an institution-affiliated party (within the meaning of section 3(u) of the Federal Deposit Insurance Act) with respect to a member bank (including a separation caused by the closing of such a bank) shall not affect the jurisdiction and authority of the appropriate Federal banking agency to issue any notice and proceed under

Case 8:23-cv-01791-AAQ Document 4 Filed 07/07/23 Page 10 of 24

this section against any such party, if such notice is served before the end of the 6-year period beginning on the date such party ceased to be such a party with respect to such bank (whether such date occurs before, on, or after the date of the enactment of this subsection).

[12 USC 504(m). As added by act of Aug. 9, 1989 (103 Stat. 461).]

\* So in original. Subsection (m) was added without subsections (j) through (*l*).

Last Update: February 14, 2017

# DURABLE FINANCIAL POWER OF ATTORNEY

You should be very careful in deciding whether or not to sign this document. The powers granted by you (the principal) in this document are broad and sweeping. This power of attorney authorizes another person (your agent) to make decisions concerning your property for you (the principal). Your agent will be able to make decisions and act with respect to your property (including your money) whether or not you are able to act for yourself.

You should select someone you trust to serve as your agent. Unless you specify otherwise, generally the agent's authority will continue until you die or revoke the power of attorney or the agent resigns or is unable to act for you.

You need not grant all of the powers listed below. If you choose to grant less than all of the listed powers, you may instead use a Maryland Statutory Form Limited Power of Attorney and mark on that Maryland Statutory Form Limited Power of Attorney which powers you intend to delegate to your attorney–in–fact (the Agent) and which you do not want the Agent to exercise.
This power of attorney becomes effective immediately unless you state otherwise in the Special Instructions.

You should obtain competent legal advice before you sign this power of attorney if you have any questions about the document or the authority you are granting to your agent.

I, JUWUAN BRISCOE of 7503 Surrats Rd, Clinton , Maryland, 20735 (hereinafter known as the "Principal"), **HEREBY DESIGNATE** Juwuan Briscoe of 3011 Prince Albert Sq, APT F, Waldorf, Maryland, 20602, (hereinafter known as the "Agent"), to act as the Agent for the Principal's benefit, and shall exercise powers in the Principal's best interest and general welfare, as a fiduciary.

## APPOINTMENT OF ALTERNATE AGENT

There shall be no other individuals authorized to make financial decisions on the Principal's behalf.

## THE PRINCIPAL DELEGATES THE FOLLOWING POWERS TO THE AGENT

(The Principal must **Initial** in the preceding space to all the powers (**IN BOLD**) if either granted or negated)

 **BANKING** - In regards to banking activities, the Principal authorizes the Agent to:

Continue, modify, and terminate an account or other banking arrangement made by or on behalf of the Principal;

Establish, modify, and terminate an account or other banking arrangement with a bank, trust company, savings and loan association, credit union, thrift company, brokerage firm, or other financial institution selected by the Agent;

Contract for services available from a financial institution, including renting a safe deposit box or space in a vault;

Withdraw, by check, order, electronic funds transfer, or otherwise, money or property of the Principal deposited with or left in the custody of a financial institution;

Receive statements of account, vouchers, notices, and similar documents from a financial institution and act with respect to them;

Enter a safe deposit box or vault and withdraw or add to the contents;

Borrow money and pledge as security personal property of the Principal necessary to borrow money or pay, renew, or extend the time of payment of a debt of the Principal or a debt guaranteed by the Principal;

Make, assign, draw, endorse, discount, guarantee, and negotiate promissory notes, checks, drafts, and other negotiable or nonnegotiable paper of the Principal or payable to the Principal or the Principal's order, transfer money, receive the cash or other proceeds of those transactions, and accept a draft drawn by a person upon the Principal and pay it when due;

Receive for the Principal and act upon a sight draft, warehouse receipt, or other document of title whether tangible or electronic, or other negotiable or nonnegotiable instrument;

Apply for, receive, and use letters of credit, credit and debit cards, electronic transaction authorizations, and traveler's checks from a financial institution and give an indemnity or other agreement in connection with letters of credit; and

Consent to an extension of the time of payment with respect to commercial paper or a financial transaction with a financial institution.

**BUSINESS INTEREST -** In regards to business-related activities, the Principal authorizes the Agent to:

Operate, buy, sell, enlarge, reduce, or terminate an ownership interest;

Perform a duty or discharge a liability and exercise in person or by proxy a right, power, privilege, or option that the Principal has, may have, or claims to have;

Enforce the terms of an ownership agreement;

Initiate, participate in, submit to alternative dispute resolution, settle, oppose, or propose or accept a compromise with respect to litigation to which the Principal is a party because of an ownership interest;

Exercise in person or by proxy, or enforce by litigation or otherwise, a right, power, privilege, or option the Principal has or claims to have as the holder of stocks and bonds;

Initiate, participate in, submit to alternative dispute resolution, settle, oppose, or propose or accept a compromise with respect to litigation to which the Principal is a party concerning stocks and bonds;

With respect to an entity or business owned solely by the Principal:

i. Continue, modify, renegotiate, extend, and terminate a contract made by or on behalf of the Principal with respect to the entity or business before execution of the power of attorney;
ii. determine:
    a. The location of its operation;
    b. The nature and extent of its business;
    c. The methods of manufacturing, selling, merchandising, financing, accounting, and advertising employed in its operation;
    d. The amount and types of insurance carried; and
    e. The mode of engaging, compensating, and dealing with its employees and accountants, attorneys, or other advisors;

Change the name or form of organization under which the entity or business is operated and enter into an ownership agreement with other persons to take over all or part of the operation of the entity or business; and

Demand and receive money due or claimed by the Principal or on the Principal's behalf in the operation of the entity or business and control and disburse the money in the operation of the entity or business;

Put additional capital into an entity or business in which the Principal has an interest;

Join in a plan of reorganization, consolidation, conversion, domestication, or merger of the entity or business;

Sell or liquidate all or part of an entity or business;

Establish the value of an entity or business under a buy-out agreement to which the Principal is a party;

Prepare, sign, file, and deliver reports, compilations of information, returns, or other papers with respect to an entity or business and make related payments; and

Pay, compromise, or contest taxes, assessments, fines, or penalties and perform any other act to protect the Principal from illegal or unnecessary taxation, assessments, fines, or penalties, with respect to an entity or business, including attempts to recover, in any manner permitted by law, money paid before or after the execution of the power of attorney.

_JB_ **SAFE DEPOSIT BOX** - The Principal authorizes the Agent to have access, at anytime, to any safe-deposit box rented by the Principal or to which (s)he may have access, wheresoever located, including drilling, if necessary, and to remove all or any part of the contents thereof, and to surrender or relinquish said safe-deposit box; and any institution in which any such safe-deposit box may be located shall not incur any liability the Principal or their estate as a result of permitting the Agent to exercise this power.

_JB_ **STOCKS AND BONDS** - In regards to stocks and bonds, the Principal authorizes the Agent to:

Buy, sell, and exchange stocks and bonds;

Establish, continue, modify, or terminate an account with respect to stocks and bonds;

Pledge stocks and bonds as security to borrow, pay, renew, or extend the time of payment of a debt of the Principal;

Receive certificates and other evidences of ownership with respect to stocks and bonds; and

Exercise voting rights with respect to stocks and bonds in person or by proxy, enter into voting trusts, and consent to limitations on the right to vote.

*JB* **COMMODITIES AND OPTIONS** - In regards to commodities and options, the Principal authorizes the Agent to buy, sell, exchange, assign, settle, and exercise commodity futures contracts and call or put options on stocks or stock indexes traded on a regulated option exchange; and establish, continue, modify, and terminate option accounts.

*JB* **CLAIMS AND LITIGATION** - In regards to claims and litigation, the Principal authorizes the Agent to:

Assert and maintain before a court or administrative agency a claim, claim for relief, cause of action, counterclaim, offset, recoupment, or defense, including an action to recover property or other thing of value, recover damages sustained by the Principal, eliminate or modify tax liability, or seek an injunction, specific performance, or other relief;

Bring an action to determine adverse claims or intervene or otherwise participate in litigation;

Seek an attachment, garnishment, order of arrest, or other preliminary, provisional, or intermediate relief and use an available procedure to effect or satisfy a judgment, order, or decree;

Make or accept a tender, offer of judgment, or admission of facts, submit a controversy on an agreed statement of facts, consent to examination, and bind the Principal in litigation;

Submit to alternative dispute resolution, settle, and propose or accept a compromise;

Waive the issuance and service of process upon the Principal, accept service of process, appear for the Principal, designate persons upon which process directed to the Principal may be served, execute and file or deliver stipulations on the Principal's behalf, verify pleadings, seek appellate review, procure and give surety and indemnity bonds, contract and pay for the preparation and printing of records and briefs, receive, execute, and file or deliver a consent, waiver, release, confession of judgment, satisfaction of judgment, notice, agreement, or other instrument in connection with the prosecution, settlement, or defense of a claim or litigation;

Act for the Principal with respect to bankruptcy or insolvency, whether voluntary or involuntary, concerning the Principal or some other person, or with respect to a reorganization, receivership, or application for the appointment of a receiver or trustee which affects an interest of the Principal in property or other thing of value;

Pay a judgment, award, or order against the Principal or a settlement made in connection with a claim or litigation; and

Receive money or other thing of value paid in settlement of or as proceeds of a claim or litigation.

*JB* **LENDING & BORROWING** - In regards to loans, borrowing money, and promissory notes: the Principal authorizes the Agent to make loans in the Principal's name; to borrow money in the Principal's name, individually or jointly with others; to give promissory notes or other obligations therefor; and to deposit or mortgage as collateral or for security for the payment thereof any or all of the Principal's securities, real estate, personal property, or other property of whatever nature and wherever situated, held by the Principal personally or in trust for their benefit.

*JB* **GOVERNMENT BENEFITS** - In regards to Government benefits, the Principal authorizes the Agent to:

Execute vouchers in the name of the Principal for allowances and reimbursements payable by the United States or a foreign government or by a state or subdivision of a state to the Principal, including allowances and reimbursements for transportation of individuals considered relatives or family, and for shipment of their household effects;

Take possession and order the removal and shipment of property of the Principal from a post, warehouse, depot, dock, or other place of storage or safekeeping, either governmental or private, and execute and deliver a release, voucher, receipt, bill of lading, shipping ticket, certificate, or other instrument for that purpose;

Enroll in, apply for, select, reject, change, amend, or discontinue, on the Principal's behalf, a benefit or program not limited but including Social Security, Medicare, Medicaid, and any Military Benefits;

Prepare, file, and maintain a claim of the Principal for a benefit or assistance, financial or otherwise, to which the Principal may be entitled under a statute or regulation;

Initiate, participate in, submit to alternative dispute resolution, settle, oppose, or propose or accept a compromise with respect to litigation concerning any benefit or assistance the Principal may be entitled to receive under a statute or regulation; and

Receive the financial proceeds of a claim described in this section and conserve, invest, disburse, or use for a lawful purpose anything so received.

*JB* **RETIREMENT PLANS** - The Principal authorizes the Agent authority over retirement plans defined as:

A plan or account created by an employer, the Principal, or another individual to provide retirement benefits or deferred compensation of which the Principal is a participant, beneficiary, or owner, including a plan or account under the following sections of the Internal Revenue Code:

An individual retirement account under Internal Revenue Code Section 408, 26 U.S.C. Section 408, as amended;

A Roth individual retirement account under Internal Revenue Code Section 408A, 26 U.S.C. Section 408A, as amended;

A deemed individual retirement account under Internal Revenue Code Section 408(q), 26 U.S.C. Section 408(q), as amended;

An annuity or mutual fund custodial account under Internal Revenue Code Section 403(b), 26 U.S.C. Section 403(b), as amended;

A pension, profit-sharing, stock bonus, or other retirement plan qualified under Internal Revenue Code Section 401(a), 26 U.S.C. Section 401(a), as amended;

A plan under Internal Revenue Code Section 457(b), 26 U.S.C. Section 457(b), as amended; and

A non-qualified deferred compensation plan under Internal Revenue Code Section 409A, 26 U.S.C. Section 409A, as amended.

Unless the power of attorney otherwise provides, language in a power of attorney granting general authority with respect to retirement plans authorizes the Agent to:

> i. Select the form and timing of payments under a retirement plan and withdraw benefits from a plan;
> ii. Make a rollover, including a direct trustee-to-trustee rollover, of benefits from one retirement plan to another;
> iii. Establish a retirement plan in the Principal's name;
> iv. Make contributions to a retirement plan;
> v. Exercise investment powers available under a retirement plan; and borrow from, sell assets to, or purchase assets from a retirement plan.

 **TAXES** - In regards to taxes, the Principal authorizes the Agent to:

Prepare, sign, and file federal, state, local, and foreign income, gift, payroll, property, Federal Insurance Contributions Act, and other tax returns, claims for refunds, requests for extension of time, petitions regarding tax matters, and any other tax-related documents, including receipts, offers, waivers, consents, including consents and agreements under Internal Revenue Code Section 2032A, 26 U.S.C. Section 2032A, as amended, closing agreements, and any power of attorney required by the Internal Revenue Service or other taxing authority with respect to a tax year upon which the statute of limitations has not run and the following 25 tax years;

Pay taxes due, collect refunds, post bonds, receive confidential information, and contest deficiencies determined by the Internal Revenue Service or other taxing authority;

Exercise any election available to the Principal under federal, state, local, or foreign tax law; and

Act for the Principal in all tax matters for all periods before the Internal Revenue Service, or other taxing authority.

**INSURANCE AND ANNUITIES** - In regards to insurance policies and annuities, the Principal authorizes the Agent to:

Continue, pay the premium or make a contribution on, modify, exchange, rescind, release, or terminate a contract procured by or on behalf of the Principal which insures or provides an annuity to either the Principal or another person, whether or not the Principal is a beneficiary under the contract;

Procure new, different, and additional contracts of insurance and annuities for the Principal and the Principal's spouse, children, and other dependents, and select the amount, type of insurance or annuity, and mode of payment;

Pay the premium or make a contribution on, modify, exchange, rescind, release, or terminate a contract of insurance or annuity procured by the Agent;

Apply for and receive a loan secured by a contract of insurance or annuity;

Surrender and receive the cash surrender value on a contract of insurance or annuity;

Exercise an election;

Exercise investment powers available under a contract of insurance or annuity;

Change the manner of paying premiums on a contract of insurance or annuity;

Change or convert the type of insurance or annuity with respect to which the Principal has or claims to have authority described in this section;

Apply for and procure a benefit or assistance under a statute or regulation to guarantee or pay premiums of a contract of insurance on the life of the Principal;

Collect, sell, assign, hypothecate, borrow against, or pledge the interest of the Principal in a contract of insurance or annuity;

Select the form and timing of the payment of proceeds from a contract of insurance or annuity; and

Pay, from proceeds or otherwise, compromise or contest, and apply for refunds in connection with, a tax or assessment levied by a taxing authority with respect to a contract of insurance or annuity or its proceeds or liability accruing by reason of the tax or assessment.

**ESTATES, TRUSTS, AND OTHER BENEFICIAL INTERESTS -** In regards to the Principal's Estates, Trusts, and other Beneficial Interests, the Principal authorizes the Agent to have general authority with respect to estates, trusts, and other beneficial interests to:

Accept, receive, receipt for, sell, assign, pledge, or exchange a share in or payment from the fund;

Demand or obtain money or another thing of value to which the Principal is, may become, or claims to be, entitled by reason of the fund, by litigation or otherwise;

Exercise for the benefit of the Principal a presently exercisable general power of appointment held by the Principal;

Initiate, participate in, submit to alternative dispute resolution, settle, oppose, or propose or accept a compromise with respect to litigation to ascertain the meaning, validity, or effect of a deed, will, declaration of trust, or other instrument or transaction affecting the interest of the Principal;

Initiate, participate in, submit to alternative dispute resolution, settle, oppose, or propose or accept a compromise with respect to litigation to remove, substitute, or surcharge a fiduciary;

Conserve, invest, disburse, or use anything received for an authorized purpose;

Transfer an interest of the Principal in real property, stocks and bonds, accounts with financial institutions or securities intermediaries, insurance, annuities, and other property to the trustee of a revocable trust created by the Principal as settlor; and

Reject, renounce, disclaim, release, or consent to a reduction in or modification of a share in or payment from the fund.

*JB*  **REAL ESTATE** - In regards to real estate, The Principal authorizes the Agent to:

Demand, buy, lease, receive, accept as a gift or as security for an extension of credit, or otherwise acquire or reject an interest in real property or a right incident to real property;

Sell; exchange; convey with or without covenants, representations, or warranties; quitclaim; release; surrender; retain title for security; encumber; partition; consent to partitioning; subject to an easement or covenant; subdivide; apply for zoning or other governmental permits; plat or consent to platting; develop; grant an option concerning; lease; sublease; contribute to an entity in exchange for an interest in that entity; or otherwise grant or dispose of an interest in real property or a right incident to real property;

Pledge or mortgage an interest in real property or right incident to real property as security to borrow money or pay, renew, or extend the time of payment of a debt of the Principal or a debt guaranteed by the Principal;

Release, assign, satisfy, or enforce by litigation or otherwise a mortgage, deed of trust, conditional sale contract, encumbrance, lien, or other claim to real property which exists or is asserted;

> i. Manage or conserve an interest in real property or a right incident to real property owned or claimed to be owned by the Principal, including:
> ii. Insuring against liability or casualty or other loss;
> iii. Obtaining or regaining possession of or protecting the interest or right by litigation or otherwise;
> iv. Paying, assessing, compromising, or contesting taxes or assessments or applying for and receiving refunds in connection with them; and
> v. Purchasing supplies, hiring assistance or labor, and making repairs or alterations to the real property;

Use, develop, alter, replace, remove, erect, or install structures or other improvements upon real property in or incident to which the Principal has, or claims to have, an interest or right;

Participate in a reorganization with respect to real property or an entity that owns an interest in or right incident to real property and receive, and hold, and act with respect to stocks and bonds or other property received in a plan of reorganization, including:

> i. Selling or otherwise disposing of them;

ii. Exercising or selling an option, right of conversion, or similar right with respect to them; and
iii. exercising any voting rights in person or by proxy;
iv. change the form of title of an interest in or right incident to real property; and

Dedicate to public use, with or without consideration, easements or other real property in which the Principal has, or claims to have, an interest.

_JB_ **PERSONAL PROPERTY** - In regards to personal property, the Principal authorizes the Agent to:
Demand, buy, receive, accept as a gift or as security for an extension of credit, or otherwise acquire or reject ownership or possession of tangible personal property or an interest in tangible personal property;

Sell; exchange; convey with or without covenants, representations, or warranties; quitclaim; release; surrender; create a security interest in; grant options concerning; lease; sublease; or, otherwise dispose of tangible personal property or an interest in tangible personal property;

Grant a security interest in tangible personal property or an interest in tangible personal property as security to borrow money or pay, renew, or extend the time of payment of a debt of the Principal or a debt guaranteed by the Principal;

Release, assign, satisfy, or enforce by litigation or otherwise, a security interest, lien, or other claim on behalf of the Principal, with respect to tangible personal property or an interest in tangible personal property;

Manage or conserve tangible personal property or an interest in tangible personal property on behalf of the Principal, including:

> i. Insuring against liability or casualty or other loss;
> ii. Obtaining or regaining possession of or protecting the property or interest, by litigation or otherwise;
> iii. Paying, assessing, compromising, or contesting taxes or assessments or applying for and receiving refunds in connection with taxes or assessments;
> iv. Moving the property from place to place;
> v. Storing the property for hire or on a gratuitous bailment; and
> vi. Using and making repairs, alterations, or improvements to the property; and

Change the form of title of an interest in tangible personal property.

_JB_ **PERSONAL & FAMILY MAINTENANCE** - In regards to personal and family maintenance, the Principal authorizes the Agent to:
I. Perform the acts necessary to maintain the customary standard of living of the Principal, the Principal's spouse, and the following individuals, whether living when the power of attorney is executed or later born:
> i. The Principal's children;
> ii. Other individuals legally entitled to be supported by the Principal; and
> iii. The individuals whom the Principal has customarily supported or indicated the intent to support;

II. Make periodic payments of child support and other family maintenance required by a court or governmental agency or an agreement to which the Principal is a party;

III. Provide living quarters for the individuals described in section 1 by:

    i. Purchase, lease, or other contract; or
    ii. Paying the operating costs, including interest, amortization payments, repairs, improvements, and taxes, for premises owned by the Principal or occupied by those individuals;

IV. Provide normal domestic help, usual vacations and travel expenses, and funds for shelter, clothing, food, appropriate education, including postsecondary and vocational education, and other current living costs for the individuals described in section I;

V. Pay expenses for necessary health care and custodial care on behalf of the individuals described in section I;

VI. Act as the Principal's personal representative pursuant to the Health Insurance Portability and Accountability Act, Sections 1171 through 1179 of the Social Security Act, 42 U.S.C. Section 1320d, as amended, and applicable regulations, in making decisions related to the past, present, or future payment for the provision of health care consented to by the Principal or anyone authorized under the law of this state to consent to health care on behalf of the Principal;

VII. Continue any provision made by the Principal for automobiles or other means of transportation, including registering, licensing, insuring, and replacing them, for the individuals described in section I;

VIII. maintain credit and debit accounts for the convenience of the individuals described in section I and open new accounts; and

IX. Continue payments incidental to the membership or affiliation of the Principal in a religious institution, club, society, order, or other organization or to continue contributions to those organizations.

X. Authority with respect to personal and family maintenance is neither dependent upon, nor limited by, authority that an Agent may or may not have with respect to GIFTS.

 **GIFTS** - The Principal authorizes the Agent to make gifts described as:

A gift "for the benefit of" a person includes a gift to a trust, an account under the Uniform Transfers to Minors Act, and a tuition savings account or prepaid tuition plan as defined under Internal Revenue Code Section 529, 26 U.S.C. Section 529, as amended.

Unless the power of attorney otherwise expressly provides, language in a power of attorney granting general authority with respect to gifts authorizes the Agent only to:

    i. Make outright to, or for the benefit of, a person including the Agent, a gift of any of the Principal's property, including by the exercise of a presently exercisable general power of appointment held by the Principal, in an amount per donee not to exceed the annual dollar limits of the federal gift tax exclusion under Internal Revenue Code Section 2503(b), 26 U.S.C. Section 2503(b), as amended, without regard to whether the federal gift tax exclusion applies to

the gift, or if the Principal's spouse agrees to consent to a split gift pursuant to Internal Revenue Code Section 2513, 26 U.S.C. 2513, as amended, in an amount per donee not to exceed twice the annual federal gift tax exclusion limit; and

ii. Consent, pursuant to Internal Revenue Code Section 2513, 26 U.S.C. Section 2513, as amended, to the splitting of a gift made by the Principal's spouse in an amount per donee not to exceed the aggregate annual gift tax exclusions for both spouses.

An Agent may make a gift of the Principal's property only as the Agent determines is consistent with the Principal's objectives if actually known by the Agent and, if unknown, as the Agent determines is consistent with the Principal's best interest based on all relevant factors, including:

i. The value and nature of the Principal's property;

ii. The Principal's foreseeable obligations and need for maintenance;

iii. Minimization of taxes, including income, estate, inheritance, generation skipping transfer, and gift taxes;

iv. Eligibility for a benefit, a program, or assistance under a statute or regulation; and

v. The Principal's personal history of making or joining in making gifts.

_JB_ **SPECIAL INSTRUCTIONS** - In addition to the above-stated powers, the Principal authorizes the Agent to the following special instructions: accept all titles, rights, interests, and equity owed to JUWUAN BRISCOE/principal

## EFFECTIVE DATE

This power of attorney shall begin:

**(Initial)**

_JB_ - Immediately upon the execution of this document. These powers shall not be affected by any subsequent disability or incapacity the Principal may experience in the future.

## AUTHORITY OF AGENT

Any party dealing with the Agent hereunder may rely absolutely on the authority granted herein and need not look to the application of any proceeds nor the authority of the Agent as to any action taken hereunder. In this regard, no person who may in good faith act in reliance upon the representations of the Agent or the authority granted hereunder shall incur any liability to the Principal or their estate as a result of such act. The Principal hereby ratify and confirm whatever the Agent shall lawfully do under this instrument. The Agent is authorized as he or she deems necessary to bring an action in court so that this instrument shall be given the full power and effect that the Principal intends on by executing it.

## LIABILITY OF AGENT

The Agent shall not incur any liability to the Principal under this power except for a breach of fiduciary duty.

## REIMBURSEMENT AND COMPENSATION

The Agent is entitled to reimbursement for reasonable expenses incurred in exercising the powers hereunder. In addition, the Agent shall be entitled to reasonable compensation for their duties as Agent.

## AMENDMENT AND REVOCATION

The Principal can amend or revoke this power of attorney at any time, if the Principal is not incapacitated, by a document delivered to the Agent. Any amendment or revocation is ineffective as to a third party until such third party has notice of such revocation or amendment.

This power of attorney hereby revokes any and all financial powers of attorney the Principal may have executed in the past.

## STATE LAW

This power of attorney is governed by the laws of the State of Maryland. Unless the Principal specifically limits the period of time that this power of attorney will be in effect, the Agent may exercise the powers given to him or her after (s)he becomes incapacitated. A court, however, can take away the powers of the Agent if it finds that the Agent is not acting properly. The Principal may also revoke this power of attorney at their desire. This power of attorney does not authorize the Agent to appear in court for the Principal as an attorney-at-law or otherwise to engage in the practice of law unless he or she is a licensed attorney who is authorized to practice law in Maryland.

## PHOTOCOPIES

Photocopies of this document can be relied upon as though they were originals.

IN WITNESS WHEREOF, I executed this power of attorney on June 7th , 20 23 in the presence of a notary public.

**Principal's Signature**
JUWUAN BRISCOE

**AGENT'S CERTIFICATION AND ACCEPTANCE OF AUTHORITY**

I, Juwuan Briscoe, certify that the attached is a true copy of a power of attorney naming the undersigned as Agent for JUWUAN BRISCOE. I certify that to the best of my knowledge the Principal had the capacity to execute the power of attorney, is alive, and has not revoked the power of attorney; that my powers as Agent have not been altered or terminated; and that the power of attorney remains in full force and effect.

I accept appointment as Agent under this power of attorney.

This certification and acceptance is made under penalty of perjury.

**Agent's Signature**

Juwuan Briscoe of 3011 Prince Albert Sq, APT F, Waldorf, Maryland, 20602.

# NOTARY ACKNOWLEDGMENT

STATE OF _Maryland_

_Prince George's_ County, ss.

On this _7_ day of _June_____, 20 _23_, before me appeared JUWUAN BRISCOE, as Principal of this power of attorney who proved to me through government issued photo identification to be the above-named person, in my presence executed this foregoing instrument and acknowledged that (s)he executed the same as his/her own free act and deed.

_Tommy Lowery_
Notary Public

SEAL

My commission expires: _03/08/2027_

```
TOMMY LOWERY
NOTARY PUBLIC
PRINCE GEORGE'S COUNTY COUNTY
MARYLAND
MY COMMISSION EXPIRES 03-08-2027
```

WITNESS ATTESTATION

The foregoing power of attorney was, on the date written above, published and declared by JUWUAN BRISCOE in our presence to be his/her power of attorney. We, in his/her presence and at his/her request, and in presence of each other, have attested to the same and have signed our names as attesting witnesses.

**Witness #1 Signature** _John Black_

Witness #1 Name Printed _Katika Briscoe_

Witness #1 Address _2030 Chantau Ct Waldorf MD 20603_

Witness #1 Telephone Number _301-538-7352_

**Witness #2 Signature** _Coddean S. May_

Witness #2 Name Printed _Coddean S. May_

Witness #2 Address _3702 Morales Ct District Hts Md 20747_

Witness #2 Telephone Number _240 758 0750_